UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
STEVEN WILLIAMS,

                Plaintiff,

**MEMORANDUM AND ORDER**

-against-

05-CV-2555 (SLT)

ABRAHAM GERGES, Supreme Court Justice;
TREATMENT FOR ALTERNATIVE TO STREET CRIMES;
J-CAP RESIDENTIAL TREATMENT PROGRAM;
JANE DOE, Program Director; MICHAEL J. WOODBURY,
Assistant Director,

                Defendants.
-----------------------------------------------------------------X

TOWNES, J.:

      Plaintiff, Steven Williams, who is currently incarcerated at Marcy Correctional Facility, brings this pro se action pursuant to 42 U.S.C. § 1983, alleging that defendants violated his rights under the First Amendment's Free Exercise of Religion Clause and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc et seq. Plaintiff's request to proceed in forma pauperis is granted but, for the reasons set forth below, all of plaintiff's claims against Justice Gerges and plaintiff's §1983 claims against the remaining defendants are dismissed. Plaintiff is granted leave to amend his complaint to attempt to state a claim under the RLUIPA.

Background

      On April 10, 2002, plaintiff pled guilty in the Supreme Court of the State of New York, Kings County, before defendant Abraham Gerges, a Justice of the Supreme Court. Although plaintiff does not provide any specifics relating to this plea, it is apparent from other facts alleged in the complaint that plaintiff entered a so-called "TASC plea." Under this plea arrangement, available only to non-violent offenders whose crimes are related to their substance abuse,

sentencing is deferred and the defendant is placed, through New York City TASC ("TASC"), into a residential drug treatment program.[1] TASC monitors, and updates the court on, the defendant's progress in the program. Under the terms of the plea, a defendant who fails to complete the program may be sentenced to a prison term for the crime to which he or she pled guilty. On the other hand, a defendant who successfully completes the program receives a more favorable disposition of the case pending against him or her.

After entering his plea, plaintiff was released to the custody of a TASC representative, who transported plaintiff to defendant J-CAP – a residential drug treatment program. There, plaintiff was interviewed by the program's Assistant Director, defendant Michael J. Woodberry, in the presence of J-CAP's Director, defendant Jane Doe, and plaintiff's TASC case manager. According to plaintiff's complaint, Woodberry told plaintiff that he would be required to shave his beard and to remove his "kufi" (a hat worn by Muslim men) and his "half moon and crescent ring" (which plaintiff characterizes as a "Religious Medal") in order to enter the program. Complaint at ¶ 20. While taking an inventory of the plaintiff's property, Woodberry further informed plaintiff that he would confiscate plaintiff's three Qurans until plaintiff had completed "the orientation phase of the program," but would permit plaintiff to retain his three Bibles. Id. at ¶ 22. The program director, however, told Woodberry that he could not confiscate the Qurans, saying, "[Y]ou're going too far," and ordered Woodberry to conduct an "assessment." Id. at ¶ 23.

During the assessment, Woodberry allegedly asked plaintiff "how long had he been drug-free." Id. at ¶ 24. Plaintiff replied that, "[p]rior to incarceration, he was working on staying

---

[1]This Court assumes that plaintiff, in naming "Treatment for Alternative to Street Crimes" as a defendant, is attempting to sue New York City TASC. Although plaintiff's complaint refers to TASC as an agency, this Court takes judicial notice that New York City TASC is a program of the Education & Assistance Corporation, which is funded through the New York State Division of Probation and Correctional Alternatives and by the New York City Council. See http://www.eacinc.org/p-nycTASC.htm.

2

completely abstinent." Id. Based on this response, Woodberry found plaintiff ineligible for the program, stating, "[Y]ou're religious and not an addict." Id.

Rather than immediately returning plaintiff to court, plaintiff's TASC case manager allowed plaintiff to return home for the night and directed plaintiff to report to the TASC Office the following day. Id. at 25. The next morning, plaintiff told his case manager that he had "relapsed," prompting TASC to conduct a urinalysis which tested positive for cocaine. Id. at ¶ 26. Plaintiff alleges that his relapse was "a consequence of the actions of Mr. Woodberry and Ms. Doe's refusal to correct the situation." Id. at ¶ 25.

That same day, plaintiff returned to Supreme Court in the custody of TASC representative Al Clark, who told the court that plaintiff had violated the terms of his plea agreement. Clark claimed that plaintiff had told J-CAP representatives that he was not a substance abuser and had "lied to get out of jail," but also reported that plaintiff had tested positive for drugs that morning. Id., Ex. A at 2.[2] Plaintiff, who insisted on addressing the court directly, denied telling the program representatives that he was not a drug user, saying that the program had rejected him "on the pretext" that he was not an addict, when his rejection was actually "based on [his] religion." Id., Ex. A at 5.

Justice Gerges implicitly accepted plaintiff's representation that he was a drug-abuser, for he immediately announced his intention to remand plaintiff until TASC could place him in another program. Id. Plaintiff stated that he had "no problem" being remanded, but wanted to be placed in a specific program geared towards Muslims. Id., Ex. A at 5-6. Justice Gerges expressed a willingness to place plaintiff in that program, provided that it was approved by

---

[2]Although the exhibits attached to plaintiff's complaint are not numbered, the first exhibit – a nearly complete transcript of the April 11, 2002, proceedings before Justice Gerges – will hereinafter be referred to as Exhibit A.

3

TASC. Clark, however, said he did not know whether TASC had approved that program, and requested a two week adjournment. Justice Gerges not only pressured Clark into reducing his request for an adjournment to one week, but also offered to call another program – the Bowery Mission – in an effort to have plaintiff placed immediately. Plaintiff declined the offer, stating that he had already "tried that," and that there would be "a conflict" because Bowery Mission was a Christian program. Id., Ex. A at 8-9.

When plaintiff returned to Court on April 17, 2002, Clark allegedly informed Justice Gerges that TASC did not "deal with the 'Islamic Programs'" id. at ¶ 30, but had found a bed for plaintiff at another program, Odyssey House. Plaintiff was again released to the custody of TASC, which transported him to Odyssey House's "Manor Facility," located in Manhattan. There, the "Director of [I]ntake" informed plaintiff that he would not have to remove his "kufi" or his ring, and could keep his beard and his Qurans. Later that day, however, plaintiff was transferred to Odyssey House's "Mabon Facility," located on Wards Island, where the Facility Director and "Director of Orientations" threatened to discharge him from the program unless he shaved. Nonetheless, they permitted plaintiff to return to TASC on April 19, 2002, "to consult with [TASC] Director, Ms. Raquel Colon." Id. at ¶ 34. According to plaintiff, Colon was "indifferent," id. (emphasis omitted), and refused to take any action, saying, "either you shave, or run the risk of being discharged." Id.

Plaintiff was then returned to the Mabon Facility, where he was forced to shave. After completing orientation on Wards Island, plaintiff was transferred back to the Manor Facility. However, an Assistant Director at that facility not only insisted that plaintiff continue to shave, but allegedly denied plaintiff permission to attend Friday services while permitting Christian residents at the same level of the program to attend Sunday church services. Plaintiff alleges that

4

"[t]his compounded with distress, and other matters unrelated to this suit" resulted in his "unwillingly" leaving the program on May 16, 2002. Id. at ¶ 35.

Plaintiff does not allege what action Justice Gerges took as a result of his failure to complete the program, except to state that Justice Gerges "disregarded" a recommendation from Manor House's Program Director that plaintiff be placed in the Islamic Program which plaintiff had previously requested. This Court takes judicial notice that, according to information on the New York State Department of Correctional Services' website, plaintiff has been incarcerated in New York State prisons since August 2002. See http://www.nysdocslookup.docs.state.ny.us.

In May 2005, plaintiff filed the instant complaint pursuant to 42 U.S.C. § 1983, alleging that defendants violated his rights under the First and Fourteenth Amendments of the United States Constitution and under the RLUIPA, 42 U.S.C. § 2000cc et seq. Plaintiff seeks money damages from TASC, J-CAP and its employees – Director Doe and Assistant Director Woodberry – as well as an order declaring that TASC and J-CAP operated "in violation of Muslim's Religious Rights and Practices." In addition, plaintiff seeks injunctive relief of two sorts. First, he requests an order directing Justice Gerges and all other Supreme Court justices to employ the same rules governing the "treatment Court Part."[3] Second, plaintiff demands an injunction directing TASC to "immediately expand their services to gradually include all the Islamic Programs" and directing Justice Gerges "to place as many Muslim clients as possible in said Islamic Programs." Plaintiff proposes a detailed system by which Muslim defendants would be permitted to wait 30 to 60 days for a bed to become available in these Islamic Programs and, if thereafter placed in a non-Islamic program, would "automatically become exempt from shaving"

---

[3]Presumably, plaintiff is referring to Brooklyn Treatment Court, in which relapses are punished by relatively short periods of incarceration.

5

and be permitted to wear religious jewelry and attire, to retain "scriptures of choice," and to attend Friday services.

Discussion

I. Standard of Review

Section 1915A requires this Court to review the complaint in a civil action in which a prisoner seeks redress from officers or employees of a governmental agency and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); see Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam). Similarly, 28 U.S.C. § 1915(e)(2)(B) of the United States Code requires a district court to dismiss a case if the court determines that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action is frivolous as a matter of law when, inter alia, it is based on an "indisputably meritless legal theory"– that is, when it "lacks an arguable basis in law..., or [when] a dispositive defense clearly exists on the face of the complaint." Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998).

Because plaintiff is proceeding pro se, his complaint must be read liberally and interpreted as raising the strongest arguments it suggests. McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend it. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000); Gomez v. USAA Fed. Sav. Bank, 171 F.3d 794, 795 (2d Cir. 1999).

## II. Judicial Immunity

Plaintiff's claims against Justice Gerges must be dismissed because this defendant enjoys judicial immunity. Judges are absolutely immune from lawsuits alleging that they performed their judicial functions improperly or inadequately. See Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam); Montero v. Travis, 171 F3d 757, 760 (2d Cir. 1999). "[J]udicial immunity is an immunity from suit, not just from ultimate assessment of damages," Mireles, 502 U.S. at 11 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)), and "applies even when the judge is accused of acting maliciously and corruptly." Pierson v. Ray, 386 U.S. 547, 554 (1967). This broad immunity is "necessary because 'principled and fearless decision-making' will be compromised if a judge 'fear[s] that unsatisfied litigants may hound him with litigation charging malice or corruption.'" Arena v. Dept. of Soc. Servs. of Nassau County, 216 F.Supp.2d 146, 152 (E.D.N.Y. 2002) (quoting Vasile v. Dean Witter Reynolds, Inc., 20 F.Supp.2d 465, 489 (E.D.N.Y. 1998), aff'd, 205 F.3d 1327 (2d Cir. 2000)).

In this case, it is not entirely clear what Justice Gerges is alleged to have done wrong. After all, Justice Gerges not only accepted plaintiff's TASC plea in the first place, but unquestioningly accepted plaintiff's representation that he was in fact a drug addict after J-CAP concluded the contrary, pressured Clark to expedite the case, and even offered to contact the Bowery Mission himself in an effort to expedite plaintiff's placement in a new program. Indeed, the only relief sought with respect to this defendant is an order directing Justice Gerges to apply unspecified rules applicable to the "treatment Court Part" – something which plaintiff concedes that Justice Gerges, who sits in Criminal Term, was "exempt" from doing – and directing him to place Muslim defendants in Islamic Programs which do not yet have a relationship with TASC.

7

The only actions attributed to Justice Gerges which could conceivably have violated plaintiff's rights were 1) his refusal to place plaintiff in the Islamic Program he requested, notwithstanding the fact that TASC did not "deal" with that program, or 2) his decision to disregard a Program Manager's recommendation that plaintiff be placed in an Islamic Program following plaintiff's failure to complete the Odyssey House program. Both of these actions, however, fall squarely within Justice Gerges' judicial function. Since Justice Gerges is absolutely exempt from any claims relating to his performance of his judicial function, all claims against Justice Gerges are hereby dismissed.

### III. Plaintiff's § 1983 Claims

It is also apparent from the face of the complaint that plaintiff's § 1983 claims against TASC, J-CAP and its employees are time-barred. The statute of limitations for actions under §1983 is the statute of limitations applicable to personal injury actions occurring in the state in which the federal court sits. Dory v. Ryan, 999 F.2d 679, 681 (2d Cir. 1993) (citing Wilson v. Garcia, 471 U.S. 261 (1985)). Since section 214(5) of New York's Civil Practice Law and Rules provides a three-year statute of limitations for personal injury actions, the statute of limitations for actions brought in this Court pursuant to §1983 is three years. Owens v. Okure, 488 U.S. 235, 251 (1989); Paige v. Police Dept. of City of Schenectady, 264 F.3d 197, 199, n.2 (2d Cir. 2001). Generally, that limitations period begins to run "when the plaintiff knows or has reason to know of the harm" he or she has suffered. Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001) (quoting Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994), cert. denied, 516 U.S. 808 (1995)).

All of the allegations in the complaint concerning J-CAP and its employees relate to actions these defendants took on April 10, 2002. In addition, the last action on the part of any

8

TASC employee or representative is alleged to have taken place on April 19, 2002 – the date on which TASC's Director allegedly refused to intervene in plaintiff's dispute with Odyssey House. Plaintiff immediately knew of the harm from these actions, but did not file the instant complaint until May 2005, more than three years after the actions allegedly took place.

"Dismissal is appropriate where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the complaint." Burton v. Doe, No. 05-CV-1326 (CBA), 2005 WL 1177936, at *2 (E.D.N.Y. May 18, 2005) (citing Pino v. Ryan, 49 F.3d 51, 53 (2d Cir. 1995) (affirming sua sponte dismissal under 28 U.S.C. § 1915(d) on statute of limitations grounds)). Accordingly, plaintiff's § 1983 claims relating to defendants TASC, J-CAP and J-CAP's Director and Assistant Director are hereby dismissed as time-barred.

## IV. Plaintiff's Claims under the RLUIPA

Although plaintiff's complaint expressly states that this action is brought pursuant to 42 U.S.C. § 1983, the complaint also specifically alleges a violation of "42 U.S.C. § 2000cc (RLUIPA)." Complaint at ¶ 8. The RLUIPA, which was enacted in September 2000, provides:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in [42 U.S.C.] section 1997 ..., even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). The term "institution" is defined in 42 U.S.C. § 1997 as including "any facility or institution ... which ... provides services on behalf of any State or political subdivision of a State; and ... which is ... providing ... custodial or residential care." In addition, the

RLUIPA applies in any case in which "the substantial burden is imposed in a program or activity that receives Federal financial assistance." 42 U.S.C. § 2000cc-1(b)(1).

The RLUIPA provides individuals with a private right of action, stating that "[a] person may assert a violation of [the RLUIPA] as a claim ... in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C. § 2000cc-2(a). Since "[t]he provision of an express, private means of redress in the statute itself is ordinarily an indication that Congress did not intend to leave open a more expansive remedy under § 1983," City of Rancho Palos Verdes, Cal. v. Abrams, ___U.S.___, 125 S.Ct. 1453, 1458 (2005), this private right of action may be the exclusive avenue for obtaining relief for a violation of the RLUIPA. This Court need not decide the novel question of whether a RLUIPA claim can be brought under § 1983, since this Court has already determined that plaintiff's § 1983 claims against TASC and J-CAP are untimely.

Plaintiff may, however, be able to state claims against these defendant under § 2000cc-2. These claims, unlike plaintiff's § 1983 claims, would not be time-barred. In 1990, Congress enacted a statute providing a four-year statute of limitations for federal civil actions "arising under an Act of Congress enacted after [December 1, 1990]." 28 U.S.C. § 1658(a). Since the RLUIPA was enacted in 2000, and does not contain its own statute of limitations, the four-year statute of limitations applies to claims brought under § 2000cc-2. United States v. Maui County, 298 F.Supp.2d 1010, 1012-13 (D. Hawaii 2003); see Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 382 (2004) (four-year statute of limitations applies to claims "made possible by a post-1990 enactment").

Conclusion

For the reasons stated above, all of plaintiff's claims against Justice Gerges and plaintiff's §1983 claims against the remaining defendants are dismissed. However, plaintiff is granted leave to amend his complaint to attempt to state a claim under the RLUIPA.

Plaintiff shall have thirty (30) days to file his amended complaint. The amended complaint must be captioned, "Amended Complaint," and bear docket number 05-CV-2555 (SLT). No summons shall issue at this time and all further proceedings shall be stayed for thirty (30) days. If plaintiff fails to amend his complaint within thirty (30) days as directed by this Order, a judgment shall be entered dismissing the complaint pursuant to 28 U.S.C. §1915A(b) and/or 28 U.S.C. § 1915(e)(2)(B). The Court certifies pursuant to 28 U.S.C. §1915 (a)(3) that any appeal from this Order would not be taken in good faith. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: Brooklyn, New York
July 18, 2005

/s/
SANDRA L. TOWNES
United States District Judge